# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Howard Mills, Superintendent of Insurance of the State of New York, as Rehabilitator of FRONTIER INSURANCE COMPANY IN REHABILITATION, a New York corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RAMONA TIRE, INC., a California corporation, et al.,<br><br>Defendant. | CASE NO. 07cv52-MMA(AJB)<br><br>**ORDER RE: DEFENDANT RAMONA TIRE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 66] |

This matter comes before the Court on Defendant Ramona Tire, Inc.'s Motion for Summary Judgment [Doc. No. 66]. Plaintiff Howard Mills,[1] Superintendent of Insurance of the State of New York, as Rehabilitator of Frontier Insurance Company In Rehabilitation, opposes the motion [Doc. No. 73]. Defendant Ramona Tire, Inc. filed a reply [Doc. No. 74]. For the following reasons, the Court **GRANTS** Defendant Ramona Tire, Inc.'s motion in its entirety.

///
///
///

---

[1] Howard Mills is named in the caption of this case as the insurance commissioner. The Court notes that Eric Dinallo currently holds that title.

## BACKGROUND

The follow material facts are not in dispute.[2] The Nominal Plaintiff in this case is the Superintendent of Insurance of the State of New York ("Plaintiff"), acting in his capacity as rehabilitator of Frontier Insurance Company ("Frontier"). Frontier is an insolvent insurance company organized and existing under the laws of the State of New York. Defendant Ramona Tire, Inc. ("Ramona") is a California corporation with its principal place of business in Hemet, California. Ramona is in the business of providing tires and automotive services. Former defendant Automotive Services Insurance Limited ("ASIL") is a captive insurance agency located in the bailiwick of Guernsey. Donald Digby, who is not a named party in this matter, is the President/Owner of Ramona and a shareholder/member of ASIL.

Frontier entered into a reinsurance agreement with ASIL effective May 1, 1999. By this contract, ASIL agreed to reinsure Frontier for insurance proceeds paid out by Frontier on policies (written for Frontier) for a now-defunct entity called "The Tire Factory Groupe LLC" ("TFG"). TFG was a group of independent tire dealers who pooled their purchases to obtain better prices. It is comprised of several companies in and around Southern California. Donald Digby was one of the original organizers of TFG, and Ramona was a member of TFG. At least two members of TFG, including Digby, set up ASIL, the offshore captive insurance company. ASIL in turn contracted with Frontier to reinsure members of TFG for workers compensation. Ramona purchased a new workers compensation insurance policy from Frontier in April 2000, almost a year after Frontier and ASIL entered into their reinsurance agreement. Ramona's general manager, Chris Wyborny, who is in charge of selecting workers compensation insurance coverage for Ramona, made the decision to purchase the Frontier policy on behalf of Ramona. Proceeds from the workers compensation policy paid by Frontier were for the benefit of the injured employees. Ramona did not keep or profit from any monies paid on its workers compensation claims.

The reinsurance agreement obligated ASIL to pay Frontier 100% of Frontier's losses and

---

[2] Unless otherwise noted, all facts are taken from Defendant's "Statement of Uncontroverted Facts and Conclusions of Law in Support of Ramona Tire, Inc.'s Motion for Summary Judgment," and Plaintiff's "Statement of Genuine Issues in Opposition to Ramona Tire, Inc.'s Motion for Summary Judgment."

loss expenses on Frontier's workers compensation and employers liability policies. Frontier knew ASIL's capitalization amount before reinsurance began. ASIL only made two payments to Frontier, the last of which was made in December 2000. On July 18, 2006, ASIL wrote to Frontier stating that it was underfunded by its shareholders and was incapable of paying claims as promised. By way of this litigation, Frontier obtained a default judgment against ASIL for the full amount of Frontier's claims.

Plaintiff alleges that Ramona defrauded Frontier via ASIL by purposefully under capitalizing and under funding the captive reinsurance company so as to make it unable to comply with its contractual obligations to Frontier, thereby saving Ramona the money it should have been paying out in workers compensation expenses. Based on further allegations arising out of the above stated events, Plaintiff brings six causes of action against Ramona: (1) fraud - deceit; (2) false promise - intent not to perform; (3) negligent misrepresentation; (4) unjust enrichment; (5) money had and received; and (6) conspiracy. The Court previously held that claims one, two, three, and six sound in fraud. (*See December 5, 2007 Order*, Doc. No. 39, p.4-5.)

Ramona moves for summary judgment in its favor as to all of Plaintiff's claims. Ramona asserts that Plaintiff's fraud-based claims are barred by California's applicable statute of limitations. Ramona also asserts that there is no genuine issue of material fact as to any of Plaintiff's claims. Ramona relies heavily on the fact that Plaintiff propounded very little discovery and has no evidence to prove its claims against Ramona, entitling Ramona to judgment as a matter of law. Plaintiff argues that genuine issues of material fact render summary judgment inappropriate as to Ramona's statute of limitations defense, as well as creating genuine disputes with respect to Plaintiff's substantive claims. As such, Plaintiff asserts that Ramona's motion should be denied as to all causes of action.

## DISCUSSION

### 1. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. " Fed. R.

1 Civ. P. 56(c). A fact issue is "material" only if it could affect the outcome of the suit under the
2 governing law. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 248 (1986). A fact issue is genuine
3 if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

4       A principal purpose of the summary judgment procedure is to isolate and dispose of factually
5 unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for
6 summary judgment has the burden to show initially the absence of a genuine issue concerning any
7 material fact. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 159 (1970). This can be done by
8 either producing evidence negating an essential element of the plaintiff's claim, or by showing that
9 plaintiff does not have enough evidence of an essential element to carry its ultimate burden at trial.
10 *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1103 (9th Cir. 2000).
11 Once the moving party has met its initial burden, the burden shifts to the nonmoving party to
12 establish the existence of an element essential to that party's case, and on which that party will bear
13 the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To
14 discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have
15 evidence showing that there is a genuine issue for trial. *See id*. at 324.

16       Special rules of construction apply to evaluating summary judgment motions: (1) all
17 reasonable doubts as to the existence of genuine issues of material fact should be resolved against
18 the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the
19 light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*.,
20 809 F.2d 626, 630 (9th Cir. 1987).

21       ***2.***    ***Evidentiary Objections***

22       The parties raise several evidentiary objections. First, Plaintiff objects to Exhibit "E" of the
23 Declaration of Lisa M. Pisano submitted in support of Ramona's motion for summary judgment.
24 Exhibit E is a document recording the minutes of a January 9, 2006 telephonic meeting of the
25 directors of ASIL. Plaintiff argues that the evidence fails to meet the requirements of Rule 56(e)
26 that affidavits "shall be made on personal knowledge." Fed. R. Civ. P. 56(e). Specifically, Plaintiff
27 asserts that Ms. Pisano fails to lay a proper foundation for the document and fails to authenticate the
28 document, neglecting to state whether she has personal knowledge of the document. As such,

1  Plaintiff argues the evidence should be excluded based on Federal Rule of Evidence 901(b)(1)
2  (authentication) and Rules 801, 802 (hearsay). In reply, Ramona submits the Declaration of Donald
3  L. Digby, in which Digby swears to having personal knowledge of the contents of the document, as
4  he participated in the January 9, 2006 telephonic meeting, and authenticates the document as an
5  accurate representation of the meeting's minutes. Thus, even if the Court found Ms. Pisano's
6  declaration insufficient to support inclusion of Exhibit E as evidence, the Digby Declaration
7  authenticates the document as a business record of which he has personal knowledge, thereby
8  satisfying Rules 901 and 801. Accordingly, the Court overrules Plaintiff's objection to Exhibit E.

9  Ramona objects to the Declaration of Ronald Labenski submitted by Plaintiff in support of
10 the opposition to Ramona's motion. Ramona argues that the Labenski Declaration offers witness
11 testimony that lacks a foundation in personal knowledge and is improperly presented as expert
12 testimony regarding specialized knowledge. Labenski is the Chief Reinsurance Officer for Frontier.
13 Ramona objects to the declaration as a whole, however the Court finds that Ramona's objections
14 primarily regard paragraphs 10-12 of his declaration in which he opines that Ramona kept ASIL
15 under capitalized in order to keep its loss ratio down.

16  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise
17 genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara*
18 *Falls*, 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th
19 Cir. 1979); *see* Fed. R. Civ. P. 56(e) (evidence presented by the parties must be admissible).
20 Labenski offers no specific facts supporting his claim that Ramona kept ASIL under capitalized in
21 for the purposes which he alleges. His statements are conclusory and self-serving. *See, e.g.*,
22 *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (an affidavit that contained
23 conclusory assertions but no facts substantiating the claim was insufficient to defeat summary
24 judgment), cert. denied, 516 U.S. 1048 (1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)
25 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations
26 unsupported by factual data."). Accordingly, the Court sustains Ramona's objection to the Labenski
27 Declaration, but only as to paragraphs 10, 11, and 12. The remainder of the Labenski Declaration is
28 admissible.

### *3. Statute of Limitations*

As a threshold matter, the Court must address Ramona's contention that Plaintiff's fraud-based claims are barred by California's three-year statute of limitations for filing such claims. The parties dispute when the statute of limitations began to run in this case. Ramona argues that Frontier knew facts sufficient to put it on inquiry notice regarding the alleged fraud as early as December 2000, when ASIL stopped making payments to Frontier. As such, Ramona asserts that Plaintiff's fraud claims are untimely. Plaintiff asserts that the statute of limitations was not triggered until July 2006, when ASIL informed Frontier that despite Frontier's beliefs to the contrary, ASIL was under capitalized. This suit was filed well within three years of July 2006, therefore Plaintiff argues the fraud claims were filed before the statute of limitations expired.

"The general rule is that a statute of limitations begins to run when a cause of action accrues, even though the plaintiff is ignorant of the cause of action or of the identity of the wrongdoer. A cause of action invariably accrues when there is a remedy available." *Community Cause v. Boatwright*, 124 Cal. App. 3d 888, 898, 177 Cal. Rptr. 657 (1981). "Generally, statute of limitations issues raise questions of fact that must be tried; however, when uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374, 105 Cal. Rptr. 2d 699 (2001); *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434 (9th Cir. 1984) (disputed issue as to whether plaintiff had sufficient information to be on notice of his claims at an earlier date).

"When a plaintiff is unaware of his cause of action, the 'discovery rule' may postpone accrual until he either discovers or has reason to discover it." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999). Notice of a cause of action can be actual or constructive. *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111, 751 P.2d 923 (1988). To invoke the delayed discovery rule, the plaintiff must plead facts showing: "(a) Lack of knowledge; (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the

1  facts could not have been discovered at an earlier date); (c) How and when he did actually discover
2  the fraud or mistake." *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)
3  (applying California law). Under this rule, when the plaintiff has notice or information of
4  circumstances that would put a reasonable person on inquiry notice, or has the opportunity to obtain
5  knowledge from sources open to his or her investigation, the statute commences to run. *Id.*

6  Plaintiff's fraud claims are based upon ASIL's under capitalization. When Frontier entered
7  into the Reinsurance Agreement with ASIL it was under capitalized. However, Plaintiff did not file
8  suit until October 26, 2006, well over three years later. Thus, absent application of the "delayed
9  discovery" rule, Plaintiff's fraud claims are barred by the applicable statute of limitations.

10  Plaintiff contends that Frontier did not discover the fraud until receipt of ASIL's July 18,
11  2006 letter stating it was under capitalized. The undisputed evidence, however, establishes that
12  Frontier had notice and information of circumstances regarding ASIL's under capitalization long
13  before receiving the July 18, 2006 letter. Frontier was on notice of ASIL's under capitalization
14  according to its own standards for a minimum capitalization from the moment it began negotiations
15  to enter into the Reinsurance Agreement in 1999.

16  Frontier knew ASIL's capitalization amount before reinsurance began. Frontier admits this
17  quite plainly in its opposition papers. (*See Plaintiff's Opposition*, 13, citing *Labenski Decl'n* ¶¶ 3-
18  4.) The parties negotiated as to the amount of capital required. Frontier investigated ASIL's
19  capitalization prior to approving TFG's workers compensation program. In April 1999, Frontier
20  agreed to move forward with the agreement – at the time, ASIL's realizable assets were $413,333,
21  which satisfied the $400,000 minimum the parties had negotiated. This amount was less than the
22  sum normally required by Frontier. (*See Pisano Decl'n*, Ex. E, p.2.) Plaintiff's Exhibit 3 offers
23  evidence that supports this fact. In email correspondence between TFG's Guernsey representative
24  and Frontier dated April 29, 1999, Frontier indicates that "generally" Frontier requires "the captives
25  we do business with to have a minimum of $500,000 in capital." Frontier goes on to state "we made
26  an exception for this Program." (*See Plaintiff's Opposition*, Ex. 3.) In fact, the shareholders relied
27  on this initial disclosure to protect them from any future claims by Frontier that the company was
28  insufficiently capitalized on incorporation. (*Id.*)

Even if the Court were to accept Frontier's position that technically ASIL was not "under" capitalized at the time the companies entered into the Reinsurance Agreement based on Frontier's willingness to lower the minimum requirement, Frontier had notice from the beginning that capitalization was at issue due to its negotiations with the newly created reinsurer.  ASIL only made two payments to Frontier in accordance with the Reinsurance Agreement, the last of which was made in December 2000.  This led to a series of requests and demands over the next several years from Frontier to ASIL to pay its increasing debts.  Ramona asserts that because ASIL had a lower initial capital amount, as soon as it stopped making payments Frontier had sufficient information to suspect that at best, ASIL was having financial difficulty, and at worst, ASIL was refusing to make payments under the Reinsurance Agreement for more nefarious reasons.  Either way, Frontier was on notice of the facts giving rise to the alleged fraudulent activity at least as early as December 2000.  Accordingly, the fraud claims are time barred.[3]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Ramona Tire, Inc.'s Motion for Summary Judgment [Doc. No. 66] in its entirety.  This order disposes of all remaining claims in this action.  Accordingly, the Clerk of Court is hereby instructed to terminate this case and enter a separate judgment in favor of Defendant Ramona Tire, Inc.

**IT IS SO ORDERED**.

DATED: May 22, 2009

Hon. Michael M. Anello
United States District Judge

---

[3] The Court notes that Ramona also moves for summary judgment in its favor as to Plaintiff's unjust enrichment and money had and received claims.  Because Plaintiff's opposition does not address these claims, the Court concludes that Plaintiff has failed to meet his burden on summary judgment and has failed to raise a triable issue of fact.  Accordingly, the Court grants Ramona's motion for summary judgment as to these two claims also.